WEEKS *v.* SEALE.[*]

(Division B. May 24, 1926. Suggestion of Error Overruled June 7, 1926.)

[108 So. 505. No. 25733.]

1. LOGS AND LOGGING. *Testimony of plaintiff seeking employee's lien on logs for hauling held not in conflict with that of his witness that he merely furnished teams.*

   Testimony of plaintiff, in action to establish an employee's or laborer's lien on logs for hauling them, that he agreed to perform the service of hauling, and, therefore, was an employee of the owner, *held* not in conflict with that of his witness that he merely furnished teams therefor, and that owner of the logs did the loading, driving, and unloading.

2. LOGS AND LOGGING. *One merely furnishing teams for hauling logs is not an "employee or laborer," entitled to lien (Hemingway's Code, sections 2415-2417, as amended by Laws 1922, chapter 282).*

One merely furnishing teams for hauling logs, the log owner doing the loading, driving, and unloading, is not an "employee or laborer" by Hemingway's Code, sections 2415-2417, as amended by Laws 1922, chapter 282, given a lien on the logs for his wages.

---

*Corpus Juris-Cyc. References: Logs and Logging, 38 CJ, p. 223, n. 52 New; p. 236, n. 50; Lien of Laborer on Logs, see 17 R.C.L., p. 1118.

APPEAL from circuit court of Carroll county, Second district.

HON. D. E. CRAWLEY, Special Judge.

Action by J. L. Seale against J. A. Weeks. Judgment for plaintiff, and defendant appeals. Reversed and judgment rendered.

*F. M. Glass,* for appellant.

Chapter 282, Laws of 1922, gives a lien in favor of the "employee or laborer" for "wages due and owing" but that alone. The statute is in its nature penal. It creates a preference in favor of the employee or laborer against all other debts of the employer, and must be strictly construed. It will, therefore, be noted that this lien thus created does not extend to the debt owing appellee by Ward, since the debt was not contracted or incurred as an "employee or laborer," but as rental for a team and wagon. Appellee, Seale, contributed no labor towards the hauling of the logs and was not a laborer, and the statute gives to him no lien on the logs for his debt. But should it be held that a lien would attach under this statute for rental of a team and wagon used in hauling logs, and thereby hold that the renter of the team was an employee or laborer, then I submit that this statute specially provides that "such lien shall take effect as to purchases or encumbrances for a valuable consideration, without notice thereof only from the time commencing suit to enforce the lien." In other words, such lien does not lie against an innocent purchaser for value.

All the evidence in this case shows that appellant knew nothing of any claim that appellee had, or claimed to have, in the logs until seventeen days after he had purchased the logs and had paid for them. And I submit that Seale, the appellee, would be estopped from asserting a claim against appellant if he had one.

The record shows that Seale stood by and knew that Weeks was purchasing the logs in question from Ward; yet he permitted Weeks to buy them, pay for same, and did not acquaint Weeks with the fact that Ward owed him for team hire or that he had or would assert a claim, for the logs. His act estopped him from asserting a claim against Weeks, if he ever had a claim on the logs. *Sively* v. *Williamson,* 112 Miss. 276, 72 So. 1008.

*C. E. Morgan,* also, for appellant.

*The statute provides for no lien in causes of this character.* See chapter 132, Laws of 1908; section 2415, Hemingway's Code. "It is not within the province of courts to add anything to a law written by the legislature." *Hazelhurst* v. *Mays,* 51 So. 890. This statute does not give the appellee a lien on the logs in question for the hire of his team, he was not an employee, he was not a laborer of the said Ward, and he did not contribute any service toward the moving of the logs in question. Neither could it be said that the court would construe the meaning of the legislature to have been that this would be classed as "employee or laborer," for if the legislature had intended to embrace teams or trucks within this section, there was no good reason why it should not have done so.

*Appellant was a bona-fide purchaser for a valuable consideration without notice.* Appellee totally failed to make proof, or even to raise the issue, that he made an effort to establish his lien prior to the purchase of the logs by Mr. Weeks, the appellant. And if he had a lien, or was entitled to a lien on the logs, it was just as neces-

sary for him to show that Mr. Weeks was not a *bona-fide* purchaser without notice, as it was that he should show that he had such lien, in the event that he was entitled to its enforcement.

Section 3268, Hemingway's Code, provides that the burden of proof is at all times on the plaintiff and that the issues shall be tried as ordinary actions at law. We submit that the burden was never met.

*J. W. Conger,* for appellee.

I. *Bona fides of the purchase. Was Weeks a pur-chaser in good faith?* The appellant contends that when Mr. Weeks paid the two hundred dollars, the logs became his property in good faith without notice of the lien, whether the other sixty-nine dollars was ever paid or not. This is not true by any means.

This is very far from the holding of the authorities on this question; and in addition to that, the question of the good faith of Mr. Weeks was fairly presented on the instructions given for both sides. *The lien is preserved as to the unpaid purchase money.* 43 Miss. 260, and the cases there cited.

As to the methods of protection of a *bona-fide* purchaser who has paid only a part of the price, the Mississippi rule has been repeatedly announced. See *Mayes* v. *Thompson* (Miss.), 91 So. 275; *Servis* v. *Beatty,* 32 Miss. 52; *Parker* v. *Foy,* 43 Miss, 260, 5 Am. Rep. 484; 5 A. L. R. 398.

We are very sure that counsel would not seriously dispute with us on the proposition that the sixty-nine dollars not being paid, and being a part of the purchase money and not due until Mr. Ward had loaded the logs and forwarded the bill of lading, was the equity against which the fifty-four dollar lien could be successfully laid in this case.

II. *Was Seale estopped to assert his lien?* The appellant contends that because there was evidence that the

appellee was on the ground some of the time during the day of the "stamping" of the logs, and because Mr. Weeks stated to him that he came to look at some logs for Mr. Ward and did not tell Mr. Weeks that he had a lien on them for hauling, this silence of Mr. Seale's was an estoppel of Seal to assert his lien afterwards.

This timber was purchased without Seale's knowledge or consent. The question of estoppel was a question of fact, and was resolved by the triers of that fact against Weeks. There were no dealings between Seale and Weeks about this timber. He did nothing and said nothing that could be calculated to deceive or mislead anybody, neither did he induce Weeks to purchase. See *Davis* v. *Butler* (Miss.), 91 So. 279; *Sulphine* v. *Dunbar*, 55 Miss. 255; *Staton* v. *Bryant,* 55 Miss. 261; *Murphy* v. *Jackson,* 69 Miss. 409, 13 So. 728.

III. *Did Seale have a lien within the meaning of the statute?* We insist that he did and that the court was right in permitting the case to be decided by the jury. These two witnesses, the plaintiff and the defendant, disputed with each other before the jury as to who actually performed the service, and the jury believed that Mr. Seale did the hauling and rendered the verdict accordingly. We think that settled it forever.

To confine the lien in such cases to the value of the work or labor actually accomplished by the lienor's own hands is too narrow a construction and interpretation —and one that was never intended. Moreover, the rule has been announced that the lien statute of this kind is remedial and should be given a broad and liberal construction. Also, it has been held that the lien reaches not only the personal services of the employee, but the value of the use of the implements, instrumentalities, or agencies, such as axes, cant hooks, the use of teams and the like—that is, those instrumentalities actually used in and necessary to the performance of such labor or service by the logger. In short, this statute is not to be con-

strued strictly, as was suggested in the briefs of opposing counsel, but is to be construed liberally in the light of the necessary use of the necessary agencies by which the service is performed. This man Ward was not an independent contractor, but he was engaged in this business of cutting, hauling and shipping logs as the *owner* thereof. For the above principles, see: *Hale* v. *Brown*, 47 Am. Rep. 224; 67 N. W. (Minn.) 348, 58 A. S. R. 545; 138 N. W. 781; 6 L. R. A. 362; 127 Ann. Cases 1916-C 191 and note; 94 A. S. R. 515.

The general object of the statutory lien is the protection of those who by their labor, services, skill, or materials furnished, have enhanced the value of the specific property, which thus becomes security for their payment.

Argued orally by *C. E. Morgan,* for appellant, and *J. W. Conger,* for appellee.

ANDERSON, J., delivered the opinion of the court.

The appellee brought this action in the court of a justice of the peace of Carroll county against appellant under chapter 131 of the Laws of 1908 (Hemingway's Code, sections 2415 to 2417, inclusive), as amended by chapter 282 of the Laws of 1922, to establish a lien on certain saw logs found in the possession of appellant, the purchaser from the owner of the logs, from Ward, for the payment of his alleged services in hauling the logs for Ward from the woods where cut to the railroad for shipment. The amount involved is fifty-four dollars. The appellee recovered a judgment in that court for the amount sued for, from which judgment the appellant appealed to the circuit court, where there was another trial and a verdict and judgment for appellee for the same amount, from which judgment appellant prosecutes an appeal to this court.

The appellant requested a directed verdict in his favor, which request the trial court declined to grant. That action of the court is assigned as error. The view we take of the case makes it unnecesary to consider any of the other assignments of error.

The statute under which the action was brought, follows:

"That every employee or laborer of a person, partnership, or a corporation engaged in operating a saw mill, planing mill, or in cutting and shipping (or rafting) timber, shall have a lien on all such lumber and timber of his employer for his wages due by such employer in preference to all debts due and owing from the owner thereof, but such lien shall take effect as to purchases or incumbrances for a valuable consideration, without notice thereof only from the time of commencing suit to enforce the lien.

"Sec. 2. That the lien herein provided may be enforced and trial and judgment had in the same manner as the lien for purchase money is enforced under the provisions of the chapter on lien for purchase money of goods.

"Sec. 3. That the lien hereby created shall expire six months after the claim is due unless judicial proceedings have commenced to assert it.

"Sec. 4. That all laws or parts of laws in conflict with this act are hereby repealed."

It will be observed that the only amendment of the statute made by chapter 282 of the Laws of 1922 is that the lien is made to run without judicial proceedings six months from the time the claim is due instead of three months, as provided in the act amended.

The case turns on whether or not appellee was an "employee or laborer" in the meaning of the statute. Appellant's contention is that the evidence showed, without conflict that appellee merely hired his teams to Ward the owner of the logs; that the latter himself loaded the logs on the wagons, drove the teams, and unloaded

the logs at the railroad, none of which labor was performed either by appellee or any employee of appellee. On the other hand, appellee contends that there was a conflict in the evidence as to whether appellee performed any of the labor of hauling the logs in person or through an employee.

The only witnesses who testified on this issue of fact were appellee and Ward, who was put on the witness stand by appellee. Appellee's testimony was as follows:

"Q. At the time this claim arose, did you have an agreement with him (Ward) to perform this service? A. Yes, sir.

"Q. Then you were an employee of Mr. Ward? A. Yes, sir."

Ward testified emphatically that appellee did not do the hauling, but that he hired the teams of appellee at twelve dollars a day for four and one-half days, and drove them, and, therefore, did the hauling himself; in other words, that the witness performed all the labor of hauling, using appellee's teams. As we view the evidence, there was no conflict on this issue between the testimony of appellee and that of his witness, Ward. Appellee's testimony was indefinite as to whether he contracted to do, or did, any of the labor of hauling the logs personally or by employee. He testified that he agreed to perform the service of hauling the logs, and that, therefore, he was an employee of Ward, the owner, in the hauling of the logs. Evidently he had in mind that the service of his teams was his service, and that the employment by Ward of his teams was his employment. Appellee did not expressly state in his testimony that he did the hauling himself, nor does his evidence exclude the existence of the fact that the labor of loading the logs on the wagons, driving the teams, and unloading the logs from the wagons was done by some one other than appellee or an employee of his. Therefore, we think appellee's testimony, as a witness in his own behalf, taken as true, was not in conflict with the testimony of his

witness, Ward, as to who loaded the logs on the wagons, drove the teams, and unloaded the logs from the wagons.

The question, therefore, is whether or not one who hires his teams to another to haul saw logs to the railroad for shipment, but neither performs in person nor through an employee any of the labor of hauling, is an employee or laborer in the meaning of the statute. Construing this statute in *Hinton and Walker* v. *Pearson* (Miss.), 107 So. 275, it was held that, where a person agreed with a sawmill owner to furnish teams and drivers and haul lumber for him to the railroad for shipment at so much per thousand feet, he was an employee, and entitled to the benefit of the lien provided by the statute. We think the material difference between that case and this is that in that case the plaintiff was employed to haul the lumber, furnishing all the necessary labor and teams for the purpose, while in the present case the appellee was to furnish no labor, either of himself or any employee of his, but simply hired his teams to the owner of the logs, who furnished all the labor of loading the logs on the wagons, driving the teams, and unloading the logs from the wagons at the railroad. It is true appellee's teams were employed in the hauling, but he was not. He did none of the labor of hauling. He was, therefore, neither an employee nor a laborer in the hauling of the logs. The statute should not be extended beyond its language and purpose. We think the court went far enough in favor of the claimant of a lien under this statute in the case above referred to.

We hold, therefore, that the appellee, under the statute, was neither an "employee or laborer," and, therefore, not entitled to the lien provided in the statute.

*Reversed, and judgment for appellant.*